UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICKY SHEW
and FRANCES SHEW,

    Plaintiffs,

v.                     CASE NO:  8:16-cv-766-T-33JSS

WILLIAM HORVATH,

    Defendant.
_____/

## ORDER

This matter comes before the Court pursuant to Plaintiffs Ricky and Frances Shew's Motion to Strike Expert or Limit Opinion Testimony Regarding Defendant's Expert (Doc. # 44), filed on January 6, 2017. Defendant William Horvath filed a response in opposition on January 20, 2017. (Doc. # 45). For the reasons that follow, the Motion is granted in part and denied in part.

## I.  Background

In June of 2015, Ricky and Frances Shew were living in Hernando County, Florida, when William Horvath, a detective with the Hernando County Sheriff's Office, began investigating them for mortgage fraud. (Doc. # 1 at ¶¶ 2, 5-6). The Shews were suspected of executing a sales contract for their home without disclosing that there was sinkhole

1

damage to the property. (Doc. # 27-1 at 68-69). In the course of the investigation, Horvath executed a probable cause affidavit to obtain an arrest warrant for the Shews. (Doc. # 1 at ¶ 7). Despite the purported defects with the probable cause affidavit, of which the Shews allege Horvath knew or should have known, Horvath did obtain a warrant and arrested the Shews. (Id. at ¶¶ 8-10). However, the State Attorney decided not to prosecute the case and filed a no information on December 8, 2015. (Id. at ¶ 11).

In the Complaint, filed on March 30, 2016, the Shews allege that Horvath violated their Fourth Amendment rights to be free of unreasonable searches and seizures by arresting them on the basis of a faulty probable cause affidavit. (Id. at ¶¶ 1, 12). Horvath denies that he lacked probable cause to arrest the Shews and filed his Answer containing twelve defenses on May 10, 2016. (Doc. # 5).

Subsequently, on June 15, 2016, the Court entered its Case Management and Scheduling Order setting February 1, 2017, as the discovery deadline, establishing March 1, 2017, as the dispositive motions deadline, scheduling the pretrial conference for August 17, 2017, and slating the case for the September of 2017 trial term. (Doc. # 19).

On September 8, 2016, the Shews filed their motion for partial summary judgment. (Doc. # 26). Horvath moved the Court to stay the motion, or alternatively deny it as premature, arguing that partial summary judgment is inappropriate as he has not yet significantly engaged in discovery. (Doc. # 28). The Court granted Horvath's motion and denied the Shews' motion for partial summary judgment on November 10, 2016. (Doc. # 40).

Subsequently, on January 6, 2017, the Shews moved to strike Horvath's witness on the probable cause issue, Dr. Richard M. Hough, Sr. (Doc. # 44). They assert that Dr. Hough's report impermissibly concludes that Horvath had probable cause to arrest the Shews. (Doc. # 44 at ¶ 4). Along with a description of police investigative practices and officer training on probable cause, the report includes the following opinions:

> 1.   The actions by Detective Horvath in this case were appropriate and in accordance with agency policy, law, and current professional law enforcement practices. Detective Horvath completed a competent investigation.
>
> 2.   The investigation of the reported crime of mortgage fraud, [section 817, Fla. Stat.], was reasonable and proper under the circumstances of this case. This progressed to the further lawful authority to seek arrest warrants for Mr. and Mrs. Shew for the felony crime of Mortgage Fraud, [section 817.545(2)(a), Fla. Stat.].

3

3.   A  reasonable  officer  would  rely  upon  the
engineering  reports  of  qualified  firms  for  a
determination of sinkhole activity.

4.   A  reasonable  officer  would  conclude  that
subjects would have known or should have known that
when receiving $240,000.00 that it would not be for
cancellation of a policy. The release the subjects
signed regarding this was for sinkhole activity.

5.   A  reasonable  officer  would  believe  a
disclosure asserting that there had never been a
sinkhole claim or monies paid for such property
defect  indicated  an  offer  for  sale  not  in  good
faith.

6.   A  reasonable  officer  would  assume  that  a
mortgage  loan  was  applied  for  based  on  the
requirement within the terms of the contract for
sale  to  make  such  loan  application  within  five
days.

7.   An  order  by  the  court  (arrest  warrant)  was
issued  that  authorized  law  enforcement  to  take
Ricky Nelson Shew and Frances Mae Shew into custody
to answer for the charges brought. [] Horvath, via
affidavit, clearly laid out evidence for the court
to review for a determination of probable cause.

8.   The  responsibility  of  the  Hernando  County
Sheriff's Office, like all law enforcement, is to
investigate reports of crime.

9.   There are no indications of a baseless arrest,
or a criminal charge that was fabricated.

(Doc. # 47-1 at 5-6).

The Shews assert that Dr. Hough's testimony should be

stricken or limited because: (1) whether a probable cause

affidavit establishes probable cause is a pure question of

law on which an expert should not opine; (2) Dr. Hough's

methodology is unreliable and his opinions are based on

4

information not available to Horvath at the time of the arrest; and, (3) Dr. Hough does not possess expertise regarding mortgage fraud investigations. (Id. at ¶¶ 5-9).

Horvath responded to the Motion on January 20, 2017. (Doc. # 45). The Shews did not file a reply. The Motion is now ripe for review.

## II.  **Legal Standard**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589-90. Such Daubert analysis also applies to non-scientific expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert

testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" <u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" <u>Hendrix v. Evenflo Co.</u>, 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>Id.</u> The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements. <u>Id.</u> This Court will address each aspect of the three-part inquiry below.[1]

---

[1]Although the Shews do not call their Motion a <u>Daubert</u> motion, the Motion requests that Dr. Hough's testimony be stricken or limited and raises questions regarding Dr. Hough's qualifications and methodology. Accordingly, Horvath construed the Motion as a <u>Daubert</u> motion in his response, as does the Court. <u>See</u> <u>Perez v. Wells Fargo N.A.</u>, 774 F.3d 1329, 1331 (11th Cir. 2014) ("A '[r]ose is a rose is a rose is a rose.' And a motion for an entry of default judgment is a

III. **Analysis**

A. **Qualifications**

The first question under <u>Daubert</u> is whether the proposed expert witness, Dr. Hough, is qualified to testify competently regarding the matters he intends to address. <u>City of Tuscaloosa v. Harcros Chems., Inc.</u>, 158 F.3d 548, 563 (11th Cir. 1998). "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" <u>Clena Invs., Inc. v. XL Specialty Ins. Co.</u>, 280 F.R.D. 653, 660 (S.D. Fla. 2012)(quoting <u>Jack v. Glaxo Wellcome, Inc.</u>, 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002)). "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." <u>Id.</u> (citations omitted)(internal quotation marks omitted; alteration in original)).

The Court finds that Dr. Hough's experience as a law enforcement agent and instructor qualify him as an expert in

---

motion for an entry of default judgment is a motion for an entry of default judgment is a motion for an entry of default judgment — even if its writer calls it a motion for judgment on the pleadings.")(internal footnote omitted).

law enforcement procedures. Dr. Hough became a law enforcement officer in Florida in 1979. (Doc. # 47-1 at 1). Since 1980, he has "been continuously training law enforcement officers in various topics, specifically including investigations." (Id.). Dr. Hough has "taught policing courses at the college and university level, specifically including courses in criminal investigative techniques since 1989." (Id.); cf. Washington v. City of Waldo, Fla., No. 1:15CV73-MW/GRJ, 2016 WL 3545909, at *2 (N.D. Fla. Mar. 1, 2016)(noting that expert's "education and experience in police practices matters goes well beyond that of a layman," and so he was "qualified to render expert opinions on Plaintiff's claims of false arrest, battery, excessive force, and negligent hiring and retention").

Dr. Hough has a master's degree in public administration, with a focus on criminal justice, from the John F. Kennedy School of Government at Harvard University, as well as a doctorate degree in education, with a public administration concentration, from the University of West Florida. (Doc. # 47-2 at 1). He has written a number of peer-reviewed articles on various subjects including homicide investigations and officers' use of force. (Id. at 14-15). For the last four years, Dr. Hough has "testified at several

depositions, hearings, and trials at the state and federal court level," regarding police investigations. (Doc. # 47-1 at 1; Doc. # 47-2 at 11-14).

Although the Shews point out that Dr. Hough is not a specialist on mortgage fraud, Dr. Hough is qualified on the matter of criminal investigations generally. Cf. Feliciano v. City of Miami Beach, 844 F. Supp. 2d 1258, 1263 (S.D. Fla. 2012)(holding that expert witness's "lack of knowledge concerning the 'knock and talk' technique [does] not disqualify him as a police practices expert"); Smith v. BMW N. Am., Inc., 308 F.3d 913, 919 (8th Cir. 2002)(finding that the testimony of an expert witness qualified in a general field should not have been excluded merely because the expert lacked expertise more specialized and more directly related to the relevant issue).

The Court is mindful that its "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001)(quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)). Vigorous cross-examination on Dr. Hough's familiarity with mortgage fraud investigations or the differences between those and other types of investigations will be sufficient to question Dr. Hough's credibility. See

Id. ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)). Thus, the Court finds that Dr. Hough is qualified to render an expert opinion.

   **B.   Reliability**

   The next question is whether Dr. Hough's methodology is reliable.

> Although an opinion from a non-scientific expert
> should receive the same level of scrutiny as an
> opinion from an expert who is a scientist, some
> types of expert testimony will not naturally rely
> on anything akin to the scientific method, and thus
> should be evaluated by other principles pertinent
> to the particular area of expertise.

Washington, 2016 WL 3545909, at *3 (citing Fed. R. Evid. 702, Advisory Committee Notes (2000)). Still, "[i]f the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004)(citation and internal quotation marks omitted).

"Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." Id. at 1262 (citing Fed. R. Evid. 702, Advisory Committee Notes (2000)("The trial judge in *all* cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted."))(emphasis in original). There are four recognized, yet non-exhaustive, considerations a district court may use in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 988 (11th Cir. 2016)(citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" Id. (citation omitted).

Dr. Hough avers that his report is "based upon [his] knowledge of law enforcement combined with [his] education,

training, experience, and ongoing study and teaching of policing and investigative methods to practitioners, academy recruits, and university students." (Doc. # 47-1 at 1).

But, the Shews argue that Dr. Hough's methodology is unreliable. They assert that his statements regarding how police officers should determine whether a crime has been committed are correct but that Dr. Hough failed to analyze Horvath's conduct in light of those statements. (Doc. # 44 at ¶ 7). Dr. Hough states: "Law enforcement officers of the state identify that a crime has occurred by, in part, matching actions and information against the elements of a specified crime." (Doc. # 47-1 at 2). Next, "[t]he officer entrusted with investigating various crimes then seeks evidence that an act or omission was done knowingly or intentionally by someone." (Id.).

The Shews insist that Dr. Hough did not properly analyze whether Horvath matched the Shews' "actions and information against the elements of" the crime of mortgage fraud. (Doc. # 44 at 7-8). The mortgage fraud statute specifies that an element of the crime of mortgage fraud is making a "material misstatement, misrepresentation, or omission *during* the mortgage lending process." Fla. Stat. § 817.545(2)(a)

(emphasis added). According to the Shews, "Dr. Hough does not address the fact that [] Horvath executed a probable cause affidavit alleging that the Shews committed mortgage fraud without knowing if the misrepresentation occurred during the mortgage lending process, or if the mortgage lending process ever occurred." (Doc. # 44 at 8).

Yet, Dr. Hough does address the mortgage lending process in his report — he opines that Horvath reasonably believed "a mortgage loan was applied for based on the requirement within the terms of the contract for sale to make such loan application within five days." (Doc. # 47-1 at 5, ¶ 6). Nevertheless, the Shews insist that Dr. Hough's methodology is "highly suspect" because Dr. Hough "[came] to the conclusion that it was reasonable for [Horvath] to execute a probable cause affidavit not knowing whether an essential element of mortgage fraud had been satisfied." (Doc. # 44 at 8). Thus, it seems the Shews disagree with the results Dr. Hough has reached using a methodology they admittedly consider reliable, and thus they insist that Dr. Hough could not have been applying that methodology properly. But, the reliability inquiry should not involve the Court scrutinizing the conclusions of experts — only their methods. See Seamon, 813 F.3d at 988.

13

The Court considers Dr. Hough's methodology used to determine whether an investigator could reasonably conclude that a crime has occurred, based on his experience and training in criminal investigations, reliable. See Washington, 2016 WL 3545909, at *3 (finding police practices expert's methodology reliable where the expert "used his law enforcement experience, knowledge, and training in police practices, including his review of court cases, and evaluated the facts of the instant case to form his opinions"); Bussey-Morice v. Kennedy, No. 6:11-cv-970-Orl-36GJK, 2012 WL 7992419, at *3 (M.D. Fla. Dec. 28, 2012)("As demonstrated in Lynch's affidavit, he uses his experience in police practices and procedure, including select court cases, and evaluates the facts in this case to form his opinions. There is nothing inherently unreliable about this methodology."). The Shews will have the opportunity to cross-examine Dr. Hough on his methodology and his opinions, which will be sufficient to attack Dr. Hough's credibility.

Additionally, the Shews note that Dr. Hough's "opinions are based upon information procured by Defendant's counsel during discovery and not solely upon what [] Horvath knew at the time of the alleged violation of [the Shews'] rights." (Doc. # 44 at ¶ 8). The Shews do not identify any discovery

14

reviewed by Dr. Hough to which they particularly object —
rather, they consider the fact that Dr. Hough reviewed outside
materials at all damaging to the reliability of his testimony.
But, Dr. Hough's review of discovery materials that were not
available at the time of Horvath's investigation does not
render his methodology — based on his experience and knowledge
of police practices — unreliable. Indeed, Dr. Hough's
opinions take into account that Horvath was operating with
more limited information during his investigation. For
example, Dr. Hough acknowledges that Horvath relied on the
statement in the sales contract for the property that a
mortgage would be applied for within five days to deduce that
the mortgage lending process was underway. (Doc. # 47-1 at
5).

To the extent Dr. Hough relied on evidence outside of
Horvath's knowledge at the time of the investigation to
determine that Horvath's investigation was reasonable, the
Shews may challenge Dr. Hough's credibility and the validity
of his conclusions on that basis during cross-examination.
See Maiz, 253 F.3d at 666 ("Vigorous cross-examination,
presentation of contrary evidence, and careful instruction on
the burden of proof are the traditional and appropriate means
of attacking [debatable] but admissible evidence." (citations

and internal quotation marks omitted)). The Court will also entertain more specific objections to Dr. Hough's testimony at trial if he relies on information unavailable to Horvath in opining on Horvath's investigation.

Dr. Hough's testimony meets the reliability requirement of the three-part <u>Daubert</u> analysis.

### C.   <u>Assistance to the Trier of Fact</u>

Expert testimony must also assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." <u>Frazier</u>, 387 F.3d at 1262 (citation omitted). "[T]he court must 'ensure that the proposed expert testimony is "relevant to the task at hand," . . . i.e., that it logically advances a material aspect of the proposing party's case.'" <u>Allison</u>, 184 F.3d at 1312 (citation omitted). So, while "[t]he 'basic standard of relevance . . . is a liberal one,' <u>Daubert</u>, 509 U.S. at 587, . . .[,] if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry[,]' it should be excluded because there is no 'fit.'" <u>Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.</u>, 582 F.3d 1227, 1232 (11th Cir. 2009) (citations omitted). "Proffered expert testimony generally will not help the trier of fact when it

16

offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63 (citation omitted).

The Court is also mindful that at this stage of the proceedings, before the deadline for filing motions for summary judgment has passed, it is unclear what issues will remain for the jury to determine if the case proceeds to trial. See Comer v. Gerdau Ameristeel US Inc., No. 8:14-cv-607-T-23AAS, 2017 WL 192370, at *3 (M.D. Fla. Jan. 18, 2017)(finding it premature to exclude expert witness because "[g]iven the remaining case deadlines, including anticipated briefing of dispositive motions, it is unclear what issues can be decided by the Court pretrial versus decided by the jury at trial" and to what extent "the proposed expert testimony of Mr. Riedel would ultimately assist the jury to understand the evidence or to determine a fact in issue"). Thus, the Court's analysis of whether Dr. Hough's testimony will assist the trier of fact is partially constrained because what issues the trier of fact must decide remain unsure.

Nevertheless, the Shews argue that Dr. Hough's testimony includes impermissible legal conclusions that can be excluded at this stage. Indeed, pure questions of law are "not a matter subject to expert testimony." Myers v. Bowman, 713 F.3d 1319,

1328 (11th Cir. 2013)(citing Freund v. Butterworth, 165 F.3d 839, 863 n.34 (11th Cir. 1999)(en banc)). Thus, "a witness typically may not 'give purely legal conclusions,' such as that an officer lacked probable cause to arrest." Washington, 2016 WL 3545909, at *3 (citing Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983)).

Yet, Federal Rule of Evidence 704 specifies that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). So, "[a]n expert may testify as to his opinion on an ultimate issue of fact," but the "expert may not . . . merely tell the jury what result to reach." Montgomery v. Aetna Cas. & Surety Co., 898 F.2d 1537, 1541 (11th Cir. 1990). The Eleventh Circuit has acknowledged that "the distinction between whether challenged testimony is either an admissible factual opinion or an inadmissible legal conclusion is not always easy to perceive." Hanson v. Waller, 888 F.2d 806, 811 (11th Cir. 1989)(citations omitted).

The court in Washington precluded an expert witness from testifying that an officer lacked probable cause to arrest a suspect and used excessive force in effectuating that arrest. Id. at *4. But, that court recognized that "a witness may present the factors that might inform an officer's probable cause determination, as such testimony speaks to prevailing

18

standards in law enforcement and may be quite helpful to the jury in conducting its own analysis of a false arrest claim," and allowed the witness to testify on police practices. Id. at *5 (citing Mutafis v. Markel, No. 11-13345, 2013 WL 119464, at *3-5 (E.D. Mich. Jan. 9, 2013)(distinguishing "impermissible legal conclusions" offered by experts from testimony regarding "prevailing standards in law enforcement" or "discrete police-practice issues," which is generally admissible); Kobie v. Fifthian, No. 2:12-cv-98-FtM-29DNF, 2014 WL 1652421, at *9 (M.D. Fla. Apr. 23, 2014)(finding that a police practices expert could testify to relevant investigative practices and tactics, but could not state his opinion that the arresting officer lacked probable cause to arrest plaintiff and conduct a search)).

In his report, Dr. Hough states: "Detective Horvath performed the function expected of law enforcement, [to] determine if probable cause exists that a particular crime occurred, based on the totality of the circumstances." (Doc. # 47-1 at 4). Then, among the list of his opinions, Dr. Hough concludes that Horvath "completed a competent investigation" and that he had the "lawful authority to seek arrest warrants for Mr. and Mrs. Shew for" mortgage fraud. (Id. at 5).

The Court agrees that any legal conclusions propounded by Dr. Hough, including that the arrest of the Shews was lawful because Horvath had probable cause, would not assist the trier of fact "because it is the role of the judge, and not an expert witness, to instruct the jury on the applicable principles of law." Hopkins v. City of Huntsville, Ala., No. CV-13-S-429-NE, 2014 WL 5488403, at *3 (N.D. Ala. Oct. 29, 2014)(excluding testimony of police practices expert "as to whether there was either probable cause or reasonable suspicion to justify the searches and arrest of plaintiff").

But, Dr. Hough also describes the investigative procedures of the Hernando County Sheriff's Office and the training that officers like Horvath receive on probable cause. (Doc. # 47-1 at 2-3). Such testimony does not impermissibly intrude on the province of the jury or constitute a legal conclusion. Furthermore, it would be of assistance to the jury because jurors likely will not know how officers investigate crimes. Therefore, Dr. Hough may testify as to such procedures and officers' training on determining whether probable cause exists to arrest a suspect. See Washington, 2016 WL 3545909, at *5 ("Dr. Thomas will be permitted to testify as to the factors that Florida

police officers presumably consider in assessing probable cause . . .").

Dr. Hough may also give his opinion on whether Horvath followed standard practices and procedures during his investigation in light of Dr. Hough's testimony regarding those prevailing police practices and procedures. See Samples v. City of Atlanta, 916 F.2d 1548, 1551 (11th Cir. 1990)(affirming admission of "use of force" expert's opinion that officer's discharge of his firearm was reasonable when the plaintiff charged him with a knife because "the manner in which the expert answered the question, properly informed the jury that the expert was testifying regarding prevailing standards in the field of law enforcement"); Champion v. Outlook Nashville, Inc., 380 F.3d 893, 908-09 (6th Cir. 2004)(allowing expert's testimony about specific police practices and procedures relevant to the case and his opinion on whether defendant's actions complied with nationally recognized police standards governing excessive force); Zuchel v. City & Cty. of Denver, Colo., 997 F.2d 730, 742 (10th Cir. 1993)("Mr. Fyfe had a doctorate in criminal justice and was an expert in police training, tactics, and the use of deadly force. Courts generally allow experts in this area to

state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement.").

For example, Dr. Hough emphasizes in his report that law enforcement officers investigate crimes and are taught to use the "probable cause" standard in arresting suspects, but prosecutors then decide whether to prosecute based on whether a case is strong enough to succeed under the "beyond a reasonable doubt" standard. (Doc. # 47-1 at 3-4). Thus, an arrest made after a procedurally proper investigation and supported by probable cause may not result in prosecution. (Id. at 4). To the extent the Shews may try to use the fact that the charges against them were dropped to support that there had not been sufficient probable cause for their arrest, Dr. Hough may refute such an insinuation because he then would only "testify that the prosecution ceased its case against [the Shews] for reasons other than a lack of probable cause (e.g., insufficient evidence to prove [the Shews were] guilty beyond a reasonable doubt)." Kobie, 2014 WL 1652421, at *3. These statements "are relevant to avoid any jury confusion" as jurors may not be familiar with the various reasons for which prosecutors decide not to pursue charges. Id.

Although Dr. Hough's testimony will not be excluded in its entirety as set forth herein, the Court will entertain

additional, more specific objections to Dr. Hough's testimony at trial, when it is clear what issues remain for the trier of fact.[2]

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Ricky and Frances Shew's Motion to Strike Expert or Limit Opinion Testimony Regarding Defendant's Expert (Doc. # 44) is **GRANTED IN PART AND DENIED IN PART.** Dr. Hough may testify as to his knowledge of police procedures and investigative techniques and whether, in his opinion, those procedures and techniques were followed in this case. However, Dr. Hough may not testify as to the ultimate legal conclusion of whether probable cause existed.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 16th day of February, 2017.

*Virginia M. Hernandez Covington*

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

---

[2] In his response, Horvath requests a Daubert hearing in the event that the Court does not deny the Motion. (Doc. # 45 at 7). After consideration, the Court has determined that a Daubert hearing is unnecessary here, because the case does not appear unusually complex or involve many expert witnesses. See City of Tuscaloosa, 158 F.3d at 565 n.21 (noting that "Daubert hearings are not required by law or by rules of procedure," though they may be "fruitful uses of the court's time and resources in complicated cases involving multiple expert witnesses").